UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NATHAN PETTUS                                    CIVIL ACTION

versus                                           NO. 14-1685

N. BURL CAIN, WARDEN                             SECTION: "A" (1)

REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Nathan Pettus, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On June 23, 2009, he was convicted under Louisiana law of theft of goods valued at $300 or more, but less than $500.[1]  On August 17, 2009, he was sentenced to a

---

[1] State Rec., Vol. III of IX, transcript of June 23, 2009, p. 112; State Rec., Vol. II of IX, minute entry dated June 23, 2009; State Rec., Vol. III of IX, jury verdict form.

term of two years imprisonment.[2]  On March 5, 2010, he was adjudicated a fourth felony offender and was resentenced as such to a term of life imprisonment without benefit of probation or suspension of sentence.[3]  On May 24, 2011, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction.[4]  In a separate opinion issued on that same date, the Court of Appeal also affirmed his habitual offender adjudication but remanded the matter to the district court for a clarification of whether the sentence was to be served at hard labor.[5]  On December 2, 2011, the Louisiana Supreme Court denied his related writ applications challenging those decisions.[6]

In the interim, on July 7, 2011, the state district court clarified that petitioner was sentenced to a term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[7]  On May 22, 2012, the Louisiana Fifth Circuit Court of Appeal amended that sentence to allow for the possibility of parole and then affirmed the sentence as amended.[8]

---

[2]  State Rec., Vol. III of IX, transcript of August 17, 2009; State Rec., Vol. II of IX, minute entry dated August 17, 2009.

[3]  State Rec., Vol. VI of IX, transcript of March 5, 2010; State Rec., Vol. II of IX, minute entry dated March 5, 2010.

[4]  State v. Pettus, 68 So.3d 21 (La. App. 5th Cir. 2011) (No. 10-KA-215); State Rec., Vol. II of IX.

[5]  State v. Pettus, 68 So.3d 28 (La. App. 5th Cir. 2011) (No. 10-KA-777); State Rec., Vol. II of IX.

[6]  State v. Pettus, 76 So.3d 1176 (La. 2011) (No. 2011-K-1325); State v. Pettus, 76 So.3d 1176 (La. 2011) (No. 2011-K-1326); State Rec., Vol. IX of IX.

[7]  State Rec., Vol. VII of IX, transcript of July 7, 2011; State Rec., Vol. I of IX, minute entry dated July 7, 2011.

[8]  State v. Pettus, 96 So.3d 1240 (La. App. 5th Cir. 2012) (No. 11-KA-862); State Rec., Vol. I of IX.

On or about February 25, 2013, petitioner filed an application for post-conviction relief with the state district court.[9]  That application was denied on April 11, 2013,[10] and May 31, 2013.[11]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on September 9, 2013,[12] and by the Louisiana Supreme Court on May 30, 2014.[13]

On or about July 11, 2014, petitioner filed the instant federal application seeking *habeas corpus* relief.[14]  The state concedes that the application is timely and that petitioner has exhausted his remedies in the state courts.[15]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials'

---

[9] State Rec., Vol. I of IX.

[10]  State Rec., Vol. I of IX, Order dated April 11, 2013.

[11]  State Rec., Vol. I of IX, Order dated May 31, 2013.

[12]  <u>State *ex rel.* Pettus v. Cain</u>, No. 13-KH-714 (La. App. 5th Cir. Sept. 9, 2013); State Rec., Vol. I of IX.

[13]  <u>State *ex rel.* Pettus v. State</u>, 140 So. 3d 1169 (La. 2014) (No. 2013-KH-2522); State Rec., Vol. IX of IX.

[14]  Rec. Doc. 5.

[15]  Rec. Doc. 17, p. 4.

and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v.</u>
<u>Cone</u>, 535 U.S. 685, 693 (2002).

      As to pure questions of fact, factual findings are presumed to be correct and a federal
court will give deference to the state court's decision unless it "was based on an unreasonable
determination of the facts in light of the evidence presented in the State court proceeding."  28
U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application
for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be presumed to be correct.  The applicant
shall have the burden of rebutting the presumption of correctness by clear and convincing
evidence.").

      As to pure questions of law and mixed questions of law and fact, a federal court must
defer to the state court's decision on the merits of such a claim unless that decision "was contrary
to, or involved an unreasonable application of, clearly established Federal law, as determined by the
Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary
to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535
U.S. at 694.

      Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals
has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme

> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state
> court unreasonably applies this Court's precedent; it does not require
> state courts to extend that precedent or license federal courts to treat
> the failure to do so as error.  Thus, if a habeas court must extend a
> rationale before it can apply to the facts at hand, then by definition
> the rationale was not clearly established at the time of the state-court
> decision.   AEDPA's carefully constructed framework would be
> undermined if habeas courts introduced rules not clearly established
> under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

- 6 -

II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> Deputy Kevin Gorman of the Jefferson Parish Sheriff's Office testified that, on January 15, 2009, he had the occasion to come into contact with Defendant at the Dillard's Department Store in the Lakeside Mall in Metairie, Louisiana, while working a security detail. Deputy Gorman stated his responsibilities included responding to theft and shoplifting complaints and apprehending shoplifters.  He testified that he was in his police uniform that day.  While patrolling the floor of the Dillard's on January 15, 2009, Mr. Pedro Barrios, a full-time loss prevention officer at Dillard's, indicated to Deputy Gorman via two-way radio that a male subject had picked up some belts, concealed the belts beneath his jacket, and was proceeding immediately to the store exit.  At that point, Mr. Barrios did not identify the subject in question as Defendant.  Deputy Gorman testified that he moved to stand between the store exit doors after receiving the notice from Mr. Barrios.  Deputy Gorman indicated that, when the subject in question (later identified as Defendant) was exiting the store, the subject observed him and ran back into the store. At that point, Deputy Gorman assumed Defendant was going to run through the store to the next exit.
>
> Accordingly, Deputy Gorman ran along the outside of the building thinking he would catch Defendant at the next exit. However, Mr. Barrios then alerted Detective Gorman that Defendant was actually running toward the interior of the mall.  Detective Gorman entered the interior of the mall and located the defendant near the Cafe du Monde.  As Deputy Gorman approached the defendant and put his hands on the defendant, the defendant pushed him and ran off towards the area known as "Center Court."  Deputy Gorman gave chase and eventually tasered Defendant after he ignored repeated commands to stop running.
>
> Deputy Gorman testified that the events which occurred in Dillard's on January 15, 2009 were captured on camera, but there was no video footage of the events which occurred in the mall area after the defendant ran out of Dillard's.  Deputy Gorman indicated that, according to the police report made that day, the belts Defendant were observed concealing under his jacket were recovered, and that their combined value was $307.  Deputy Gorman recalled that he checked the price tags of the belts to confirm the prices.

- 7 -

On cross-examination, Deputy Gorman indicated that on January 15, 2009, he did not know that Defendant was the person who concealed the belts in his jacket until he apprehended him. Deputy Gorman also admitted that he did not see a belt on Defendant's person prior to tasering him. Deputy Gorman was not sure whether anybody other than he or Mr. Barrios had handled the belts in question.

In recalling a previous incident while working the security detail on October 28, 2008, Deputy Gorman testified that he had the occasion to arrest Defendant and Vanessa Tabora. Deputy Gorman indicated that he was wearing a police uniform while on the detail. Deputy Gorman explained that on that date, he was in the loss prevention office with Mr. Barrios. Deputy Gorman testified that he and Mr. Barrios were looking at store security monitors when they observed Ms. Tabora carrying some Ed Hardy and Affliction brand t-shirts she had taken from store shelves. Deputy Gorman observed Ms. Tabora meet with Defendant and give him the shirts. After looking over the shirts, Defendant grabbed Ms. Tabora's purse, opened it, and placed the shirts inside. At that point, Ms. Tabora walked toward an exit, where she was detained and held by the security office. Deputy Gorman and another mall security officer subsequently located Defendant in the men's denim department of the same store and placed him under arrest. Defendant made no attempt to flee.

Deputy Gorman testified that after being arrested, Defendant was verbally and physically abusive towards him. Ms. Tabora was, however, cooperative with security personnel. According to the police report Detective Gorman created that day, the value of the three shirts misappropriated by Ms. Tabora was determined to be $232.00. Deputy Gorman indicated that the events of October 28, 2008 were captured by store surveillance cameras and transferred to a compact disc.

Mr. Barrios testified that he is a loss prevention officer at the Lakeside Mall Dillards. Mr. Barrios, additionally, testified that his duties as a loss prevention officer include monitoring surveillance cameras in Dillard's for people stealing, people changing prices, employees coming in late, and certain other employee activities.

Mr. Barrios also testified that he participated in an investigation that led to the arrest of Defendant on January 15, 2009. On that date, Mr. Barrios was working in the loss prevention office. His attention was drawn to Defendant, because Defendant was wearing a jacket with only one arm in a sleeve. Mr. Barrios confirmed that he radioed Deputy Gorman and told him that he was watching a white male in Men's Denim. Mr. Barrios then observed

the defendant pick up several belts, conceal the belts in his jacket, and head for the store's exit.

Mr. Barrios additionally confirmed through his testimony that he radioed Deputy Gorman and informed Deputy Gorman that Defendant was heading toward an exit that was approximately five feet from the belt display rack. Mr. Barrios testified that when Defendant reached the door, he observed Deputy Gorman next to the door, appeared to wave at the Deputy, ran back towards the store, and went out into the mall. Mr. Barrios testified that he did not confront Defendant initially, but after Deputy Gorman had tasered Defendant, Mr. Barrios was able to recover three Ed Hardy belts from where Defendant had run to exit the store. When questioned about the prices of the belts, Mr. Barrios testified that two of the belts were priced at $99.00; however, he stated three different prices for the third belt. Eventually, Mr. Barrios concluded that two of the Ed Hardy belts were priced at $99.00, and the third was priced at $109.00. On cross-examination, Mr. Barrios admitted that he did not create a report of this incident. He further admitted that on the surveillance tape, he could not see how many belts the defendant had taken.

In recalling the incident on October 28, 2008, Mr. Barrios testified that he participated in an investigation that led to the arrest of Defendant. The items being shoplifted on that date were Ed Hardy and Affliction brand shirts, and those items were displayed in the Men's Denim section of Dillard's located on the first floor.[16]

### III.  Petitioner's Claims

### A.  "Other Crimes" Evidence

Petitioner's first claim is that the trial court erred in allowing introduction of "other crimes" evidence. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

In his first assignment of error, Defendant argues the trial court erred in allowing the State to present evidence that the same two officers arrested him two months prior to this incident for being a principal to shoplifting in the same store and department.

---

[16]  State v. Pettus, 68 So.3d 21, 22-24 (La. App. 5th Cir. 2011) (No. 10-KA-215); State Rec., Vol. II of IX.

Defendant states the State argued that the prior theft was relevant to show his motive or intent to steal merchandise from the Men's Denim department at Dillard's.  However, Defendant argues the State failed to adequately prove his intent to steal in the first incident, and the trial court failed to weigh the probative value of the admission of the alleged prior crime against its prejudicial effect.

The State contends Defendant's intent to permanently deprive Dillard's of the belts was at issue and could be inferred by his intentional concealment on his person of goods held for sale.  The State avers the prior incident involving the concealment of the shirts inside of Vanessa Tabora's purse is relevant to his intentional concealment of the belts, his intent to permanently deprive the department store of the merchandise, and the lack of mistake or accident.  In the alternative, the State argues that if this Court finds error in admitting the evidence, such error would be harmless in light of the overwhelming evidence of Defendant's guilt.

LSA-C.E. art. 404(B) provides the basic rule regarding the use of evidence of "other crimes, wrongs or acts" at trial.  LSA-C.E. art. 404(B) states, in pertinent part,

> (1) Except as provided in Article 412 [regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.

In State v. Code, 627 So.2d 1373, 1381 (La. 1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490, rehearing denied, 512 U.S. 1248, 114 S.Ct. 2775, 129 L.Ed.2d 887 (1994), the Louisiana Supreme Court set forth the following factors which must be met for other crimes evidence to be admissible under the system or modus operandi exception:

> (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence must be substantially relevant for some

other purpose than to show a probability that the defendant committed the crime on trial because he is man of criminal character; (4) the other crimes evidence must tend to prove a material fact genuinely at issue; and (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.

The State is required to prove that defendant committed the other crimes by a preponderance of the evidence. State v. Guidroz, 98-377, pp. 11-12 (La.App. 5 Cir. 10/14/98); 721 So.2d 480, 486, writ denied, 98–2874 (La. 2/26/99); 738 So.2d 1061.

In the instant matter, Defendant attempted to steal from the same Dillard's store on both October 28, 2008 and January 15, 2009. He entered the same store and department on those dates empty handed and attempted to conceal Ed Hardy brand merchandise on his person or in Vanessa Tabora's purse. We find that the State proved by a preponderance of the evidence that Defendant committed a theft on October 28, 2008, and the probative value of the testimony regarding the October 28, 2008 incident outweighs any prejudicial effect to Defendant because of the similarities between the crimes. Accordingly, we find that this assignment of error has no merit.[17]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[18]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law, his claim simply is not reviewable in this federal proceeding.

---

[17]  State v. Pettus, 68 So.3d 21, 27-28 (La. App. 5th Cir. 2011) (No. 10-KA-215); State Rec., Vol. II of IX.

[18]  State v. Pettus, 76 So.3d 1176 (La. 2011) (No. 2011-K-1325); State Rec., Vol. IX of IX.

To the extent that petitioner is asserting a federal claim, he fares no better.  Even if petitioner could show that the evidence was in fact improperly admitted, which is questionable  at best for the reasons explained by the Louisiana Fifth Circuit Court of Appeal, federal *habeas* relief still would not be warranted.  The United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause.  The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

Here, it cannot be said that the evidence played a crucial, critical, and highly significant role in petitioner's conviction.  Rather, even aside from the "other crimes" evidence, there was overwhelming evidence of petitioner's guilt of the instant offense:  Barrios saw petitioner commit the theft; the theft was recorded on surveillance video; and petitioner fled to avoid apprehension.[19]

In summary, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject his evidentiary claim.

---

[19]  Under Louisiana law, "[e]vidence of flight, concealment, and attempt to avoid apprehension is relevant.  It indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt."  State v. Davies, 350 So.2d 586, 588 (La. 1977).

### B.  Sufficiency of the Evidence

In his interrelated second, third, and fourth claims, petitioner argues that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied relief, holding:

>Defendant makes two separate arguments in support of his contention that the evidence used to convict him was insufficient:  (1) that he did not exit the store with the merchandise, and thus was at most only guilty of an attempted theft of goods, and (2) that the loss prevention officer who retrieved the merchandise inside the store testified to three different amounts as to the aggregate value of the belts.

>The constitutional standard for testing the sufficiency of evidence requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, be sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

>Under LSA-R.S. 15:438, "[t]he rule as to circumstantial evidence is:  assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  This requirement does not establish a standard separate from the Jackson standard, but provides a helpful methodology for determining the existence of reasonable doubt. State v. Arceneaux, 05-338, p. 6 (La.App. 5 Cir. 12/27/05); 930 So.2d 44, 48.  In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events.  Id., citing State v. Davis, 92-1623 (La. 5/23/94); 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).  Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard.  Id. at p. 7, 930 So.2d 44.

>***Abandonment of the Items***
>Defendant contends that while he did initially, partially conceal the belts under his jacket, he did not attempt to take them

with him when he exited into the mall, and instead, left them in Dillard's.  Defendant further contends the most he was guilty of was an attempted theft of goods because the State failed to prove the required element that he took something from the store.

The State avers there is no merit to Defendant's claim that he was not guilty of theft because he abandoned the merchandise in Dillard's as he fled into the mall after his theft was detected.  The State contends that the theft was completed when Defendant took the belts and concealed them under his jacket, which established his misappropriation of the items and intent to deprive the merchant of them permanently.  We agree with the State's position.

LSA-R.S. 14:67.10 provides, in pertinent part, that

A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representation.  An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:

(1) Intentionally conceals, on his person or otherwise, goods held for sale.

Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1).  Specific intent is a state of mind, and as such, need not be proven as a fact, but may be inferred from the circumstances and actions of the accused.  State v. Davenport, 08-463, p. 7 (La.App. 5 Cir. 11/25/08); 2 So.3d 445, 449; State v. Green, 02-883, p. 5 (La.App. 5 Cir. 1/28/03); 839 So.2d 286, 287.  The question of whether the requisite intent is present in a criminal case is one for the trier of fact, and a review of the correctness of that determination is guided by the Jackson standard.  State v. Tran, 97-640, p. 11 (La.App. 5 Cir. 3/11/98); 709 So.2d 311, 317.

In this matter, the jury convicted Defendant of theft of goods over $300.00 but less than $500.00.  In the jury instructions given to the members of the jury, they were instructed that Defendant was presumed to be innocent until each element of the crime necessary to

constitute his guilt was proven beyond a reasonable doubt.  As the triers of fact, the jury concluded Defendant was guilty and convicted him of the crime charged.  The conviction infers the jury found Defendant did have the specific intent to permanently deprive Dillard's of its belts, despite the fact that he abandoned them in the store.

From the surveillance video and the testimony presented, it was confirmed that Defendant took the belts, concealed the belts under his jacket, and proceeded immediately toward the store's exit.  After Defendant observed Deputy Gorman move to stand between the exit doors, Deputy Gorman noticed Defendant run back into the store.  Although Defendant ultimately discarded the belts before he exited the store, it was not necessary that he physically possessed the goods he stole on his person at the time of arrest.  From the circumstances and Defendant's actions, it could be inferred that he intended to permanently deprive Dillard's of its merchandise before he realized that he had been detected by Deputy Gorman.

After reviewing the totality of the evidence, both direct and circumstantial, we conclude the evidence was sufficient for the jury to find Defendant had the intent to permanently deprive Dillard's of its merchandise.

***Value of Goods***

Defendant argues there is a question as to when the price tags were put on the belts, before or after the incident, and that creates reasonable doubt as to the value element of LSA-R.S. 14:67.10 being met.  Defendant avers Mr. Barrios testified to three different combined amounts of the belts as the State prodded him to ensure the aggregate value met the $300.00 felony threshold.  Defendant further avers Mr. Barrios, the individual who retrieved the belts, should have been able to give the correct prices the first time, without changing his testimony twice to give the desired answer of the State.

The State contends there is absolutely no basis in the record for suggesting that the tags on the belts were retroactively altered in any respect to increase the value of the merchandise taken.  The State further contends that while Mr. Barrios had trouble recalling the exact price of the third belt until he reviewed a photograph of all of the belts and the price tags, at no time did he testify that the total value of the belts was less than $300.00.  We again agree with the State's position.

There is no evidence or testimony of price tag tampering in the record.  As to the value of the items, Mr. Barrios' somewhat

confused testimony does not create reasonable doubt that the value of the belts combined was less than $300.00. The picture taken that day clearly indicates that the sale price of two of the belts was $99.00 each, and that the sale price of the third belt was $109.00, which equals at total of $307.00. Even if Mr. Barrios was correct in his original assertion that the value of the third belt was $103.00, the combined value of the belts would have been $301.00. The evidence submitted by the State was sufficient to prove an element of the offense charged, namely, that the value of the three belts was between $300.00 and $500.00. Ultimately, we conclude the evidence was sufficient to prove the aggregate total of the belts taken by Defendant amounted over $300.00.

Given the foregoing reasons, this assignment of error has no merit.[20]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[21]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213

---

[20]   State v. Pettus, 68 So.3d 21, 25-27 (La. App. 5th Cir. 2011) (No. 10-KA-215); State Rec., Vol. II of IX.

[21]   State v. Pettus, 76 So.3d 1176 (La. 2011) (No. 2011-K-1325); State Rec., Vol. IX of IX. The Court notes that petitioner thereafter attempted to again assert these claims in the state post-conviction proceedings, at which time they were denied as repetitive because they had already been addressed on direct appeal. State Rec., Vol. I of IX, Order dated April 11, 2013; State ex rel. Pettus v. Cain, No. 13-KH-714 (La. App. 5th Cir. Sept. 9, 2013); State Rec., Vol. I of IX; State ex rel. Pettus v. State, 140 So. 3d 1169 (La. 2014) (No. 2013-KH-2522); State Rec., Vol. IX of IX.

F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that he has made no such showing.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).[22]

---

[22] Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ.

Here, there was ample evidence of petitioner's guilt.  He does not argue that he was misidentified; rather, he concedes that he was the individual involved in this incident.  Although he disputes the criminality of his actions, he admits that "he did initially partially conceal the belts under his jacket";[23] further, in any event, the theft was documented in the surveillance video and Barrios testified under oath that he saw petitioner conceal the belts.  Although petitioner states that he did not intend to steal the belts, the requisite intent to commit a theft "may be inferred [by the trier of fact] from the circumstances of a transaction and from the actions of the accused." State v. Bean, 899 So.2d 702, 707 (La. App. 1st Cir. 2005); State v. Green, 839 So.2d 286, 288 (La. App. 5th Cir. 2003).  While petitioner argues that he abandoned the belts prior to exiting the store, that is irrelevant – Louisiana law provides that a theft occurs at the time the items are concealed regardless of whether they are subsequently taken outside of the store.  Morris v. Dillard Department Stores, Inc., 277 F.3d 743, 754-55 (5th Cir. 2001).  Lastly, because the merchandise was recovered with price tags attached, the evidence was clearly sufficient to establish that the value of the items exceeded $300.[24]

---

Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

[23]  Rec. Doc. 5-1, pp, 17-18.

[24]    The Court flatly rejects petitioner's contention that the property must be appraised to determine its value.  Rec. Doc. 5-1, p. 20.  Under Louisiana law, value is determined by reference to the retail prices at which the items were offered for sale by the store.  See, e.g., State v. Banks, 924 So. 2d 1059, 1062-63 (La. App. 5th Cir. 2006); State v. Council, 708 So. 2d 1283, 1284-85 (La. App. 5th Cir. 1998).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational. Therefore, petitioner cannot show that the state court's decision rejecting his claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal *habeas* court, relief is not warranted.

### C.  Defective Bill of Information

Petitioner's final two claims challenge the sufficiency of the bill of information. In the post-conviction proceedings, the state district court denied relief, holding:

> The court finds no merit to these claims, as the bill of information was clearly sufficient to inform the petitioner of the nature and cause of the charges against him. The court finds that the bill of information meets the requirements of LSA-C.Cr.P. art. 464. Furthermore, as the state points out in its response, the record contains a copy of the arrest report and probable cause affidavit which provides more details of the arrest and facts leading to the prosecution.[25]

In rejecting petitioner's related writ application, the Louisiana Fifth Circuit Court of Appeal similarly held:

> [W]e find no error in the district court's denial of claims #3 and #4. In his APCR, Relator claimed the bill of information was fatally defective because it was vague, ambiguous and lacked the essential elements of the crime charged, namely the actual amount of the goods allegedly taken. A review of the bill of information shows that it adequately complied with the short form authorized by La. C.Cr.P. art. 465(A)(44); specifically, it alleged Relator violated R.S. 14:67.10 by committing "a theft of goods, valued at over $300.00 from Dillard's." We agree with the district court that the bill of

---

[25]  State Rec., Vol. I of IX, Order dated May 31, 2013.

> information clearly and sufficiently informed Relator of the nature
> and cause of he charges against him.[26]

The Louisiana Supreme Court then denied relief without assigning reasons.[27]

The sufficiency of a state charging instrument is not a matter for federal *habeas* relief unless it can be shown that the instrument is so defective that it deprives the state court of jurisdiction. <u>McKay v. Collins</u>, 12 F.3d 66, 68 (5th Cir.), <u>reh'g granted in part on other grounds sub nom.</u>, <u>Williams v. Collins</u>, 12 F.3d 70 (5th Cir. 1994) (per curiam). The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that "determination can be made *only* by looking to the law of the state." <u>Liner v. Phelps</u>, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis in original).

Here, as noted, the state courts found that the charging document was legally sufficient as a matter of state law. Obviously, "[t]he principle that state courts are the final arbiters of state law is well-settled." <u>Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co.</u>, 706 F.3d 622, 629 (5th Cir. 2013); <u>accord</u> <u>Dickerson v. Guste</u>, 932 F.2d 1142, 1145 (5th Cir.1991) ("We will not review a state court's interpretation of its own law in a federal habeas

---

[26]   <u>State *ex rel.* Pettus v. Cain</u>, No. 13-KH-714 (La. App. 5th Cir. Sept. 9, 2013); State Rec., Vol. I of IX.

[27]   <u>State *ex rel.* Pettus v. State</u>, 140 So. 3d 1169 (La. 2014) (No. 2013-KH-2522); State Rec., Vol. IX of IX.

corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)).

Moreover, in any event, it is clear that the bill of information was in fact proper in this case. Louisiana law expressly authorizes the use of specific "short form" charging documents with respect to certain offenses, and the United States Fifth Circuit Court of Appeals has held that their use is constitutional. Liner, 731 F.2d at 1203-04. For a theft charge, a "short form" charging document suffices if it states that the accused "committed theft of _____ (state property stolen) of the value of ____ dollars." La. Code Crim. P. art. 465(A)(44).[28] Here, the bill of information followed that form, charging that, on or about January 15, 2009, petitioner "violated R.S. 14:67.10 in that he did commit a theft of goods, valued at over $300.00, from Dillards."[29] Simply put, the bill of information complied with state law, and it unquestionably alleged sufficient facts to apprise petitioner of the charge in order to prepare his defense and to afford him protection against double jeopardy. Any suggestion to the contrary beggars belief.

For these reasons, this Court has no basis for finding that the bill of information was defective. Accordingly, federal *habeas corpus* relief is not warranted with respect to these claims.

---

[28] Article 465 further provides: "The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, may also include a statement of additional facts pertaining to the offense charged. If this is done it shall not affect the sufficiency of the specific indictment form authorized by this article." La. Code Crim. P. art. 465(B).

[29] State Rec., Vol. II of IX, bill of information.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Nathan Pettus be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this twenty-third day of March, 2015.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[30] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.